**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **WELCH LAMBETH and BRIAN KAY** | § | **CIVIL ACTION NO. 24--274** |
| | § | |
| | § | **JUDGE:** |
| **Plaintiffs** | § | |
| | § | **MAGISTRATE:** |
| **vs.** | § | |
| | § | |
| **MICHAEL DEPETRILLO,** | § | **JURY TRIAL DEMANDED** |
| **METEOR, LLC, and ELC ENTERPRISE** | § | |
| **SOLUTIONS, LLC** | § | |
| | § | |
| **Defendants** | § | |

**VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR EX PARTE**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,**
**DECLARATORY RELIEF AND DAMAGES**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiffs Welch Lambeth

("Lambeth") and Brian Kay ("Kay") and for their Verified Complaint against Defendants

Michael DePetrillo ("DePetrillo"), Meteor, LLC ("Meteor"), and ELC Enterprise Solutions,

LLC ("ELC") to allege and aver upon information and belief as follows:

**THE PARTIES**

1.  Plaintiff Welch Lambeth is a person of full age of majority domiciled in and residing in the

    Parish of Orleans. Lambeth was an investor in several alleged investment "funds" created

    and maintained by DePetrillo.

2.  Plaintiff Brian Kay is a person of full age of majority domiciled in and residing in the State

    of North Carolina. Kay was an investor in several alleged investment "funds" created and

    maintained by DePetrillo.

3.  Defendant Michael DePetrillo is a person of full age of majority domiciled in and residing

    in the Parish of Orleans. DePetrillo participated in a scheme to intentionally defraud

    Plaintiffs, and many others, by inducing them to invest in investment "funds" and then re-

directing the invested funds to other funds, investors, and to himself. These alleged investments, which were nothing more than a sham, and DePetrillo's actions created a scheme that he systematically used to defraud investors.

4. Meteor, LLC ("Meteor") is a Louisiana Limited Liability Company registered to do and doing business within the State of Louisiana, with its principal place of business located in Orleans Parish at 5500 Prytania Street, Suite 240, New Orleans, Louisiana 70115. Meteor's registered agent is Michael B. Depetrillo, 1207 Exposition Boulevard, New Orleans, Louisiana 70118.  Depetrillo is the Member/ Manager of Meteor.[1]

5. ELC Enterprise Solutions, LLC ("ELC") is a Louisiana Limited Liability Company registered to do and doing business within the State of Louisiana, with its principal place of business located in Orleans Parish at 201 St. Charles Avenue, New Orleans, Louisiana 70170.  ELC's registered agent is Chris Cazenave, Jones Walker, 201 St. Charles Avenue, 51st Floor, New Orleans, Louisiana 70170.  ELC Enterprises, LLC is the Member of ELC. Although ELC filed an Affidavit of Dissolution with the Secretary of State it continues to do business as a corporate entity including the maintenance of banking accounts. Chris Cazenave is being served as both the Agent for ELC and as the company's Organizer who filed the Affidavit of Dissolution for ELC.[2]

## JURISDICTION AND VENUE

6. Subject matter jurisdiction of this Court over these parties and claims is proper pursuant to 28 U.S.C. §1331, as this civil action arises under the federal laws of the United States, including Section 22(a) of the Securities Act of 1933 (the "Securities Act") 15 U.S.C. § 77v(a), and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78aa.  In addition, this Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 because they are so related to the federal claims in

---

[1] The Louisiana Secretary of State's Records for Meteor, LLC are attached as Exhibit #1.
[2] The Louisiana Secretary of State's Records for ELC Enterprise Solutions, LLC are attached as Exhibit #2.

this action that they form part of the same case or controversy.

7. The United States District Court for the Eastern District of Louisiana has personal jurisdiction over defendants Michael DePetrillo, Meteor, LLC, and ELC Enterprise Solutions, LLC as DePetrillo is a resident of Orleans Parish and Meteor and ELC are Louisiana limited liability companies with principal places of business located in Orleans Parish.[3]

8. Venue for this civil action is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Orleans Parish, Louisiana. Additionally, there is no other district in which venue is proper under 28 U.S.C. § 1391(b), and Defendants are subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

*Michael DePetrillo is an attorney who must adhere to the highest standards of trust and responsibility as mandated by his privileged position as a member of the bar.*

9. Michael DePetrillo is a New Orleans based lawyer who was admitted to the bar in the State of Louisiana on October 18, 2007. Since admission to the bar, he has worked in the business and commercial litigation section of Jones Walker and then as in-house counsel at Ochsner Medical Center. He is now holding himself out as an investment marketer.

10. As a member of the Louisiana Bar, DePetrillo is an officer of the court and, as such, it to be held to a higher standard of trust and responsibility.

*Petrillo hooked the Plaintiffs into investing with him by accepting investment funds and providing an immediate return of approximately 12% after 16 days of investment and another 12% over several more weeks.*

11. Sometime prior to November 14, 2022, DePetrillo solicited investment from Lambeth to invest in NOLA FX Capital Management, an investment fund created by DePetrillo, promising a quick return on his investment.

12. Lambeth invested $50,000 on November 14, 2022, and NOLA FX provided Lambeth with

---

[3] Exhibits #1 & #2.

an 11.5% return on his investment within 16 days and credited his account with the gain.[4]

13. This initial investment continued to grow, and DePetrillo sent Lambeth a second statement dated February 28, 2023, showing that Lambeth had earned another 11.85% on the investment bringing his account balance to $78,544.68.[5]

***After the successful initial investment, DePetrillo sought additional investment from Plaintiffs by promising similar investment returns and luring their investment into various limited partnerships while asking Plaintiffs to wire funds directly to "related" limited liability companies that DePetrillo owned without providing Plaintiffs with any actual stake in the limited partnerships.***

14. After DePetrillo provided Lambeth with an initial successful investment return, in January of 2023, DePetrillo solicited Lambeth and offered him an opportunity to invest in gold and cryptocurrency futures via several investment vehicles that DePetrillo had allegedly created.

15. Through DePetrillo's representations, that were sent via telephone, e-mail and text, and the documents provided to Lambeth, DePetrillo was seeking investment funds purportedly to invest in investment funds that he created to purchased gold and cryptocurrency.

16. On January 26, 2023, DePetrillo sent Lambeth information regarding investing in the NOLA FX Meteor Fund, LP, an entity that DePetrillo represented was a Delaware based limited partnership.[6]

17. The Subscription Booklet ("Subscription") indicated that Meteor, LLC was the General Partner of the NOLA FX Meteor Fund, LP.[7]

18. The Subscription provided that any investor who contributed to the fund became a partner in the limited partnership.[8]

19. The Subscription mandated that any investment made in the alleged limited partnership be

---

[4] Lambeth's NOLA FX Capital Management Monthly Fund Account Statement is attached as Exhibit #24.
[5] Lambeth's Meteor Account Statement is attached as Exhibit #24.
[6] The e-mail exchange between DePetrillo and Lambeth is attached as Exhibit #3; The transmittal email is attached as Exhibit #4.
[7] The Subscription Booklet for NOLA FX Meteor Fund, LP is attached as Exhibit #5.
[8] Exhibit #5.

sent electronically to an account at Chase Bank in the name of Meteor, LLC, not an account in the name of the alleged investment vehicle.[9]

20. All of the investment proceeds were sent to Meteor, LLC at the direction of DePetrillo and absolutely no funds were sent to, or invested in, the alleged limited partnership.[10]

21. Soon after receiving fund information, Lambeth's counsel noted that the NOLA FX Meteor Fund, LP was not registered in the State of Delaware as represented in the Subscription.[11]

22. After Lambeth inquired to DePetrillo about the filing discrepancy, DePetrillo reassured him that everything was in order and that the issue was a miscommunication as the fund had restructured changing its domicile to another state.[12]

23. DePetrillo then began sending various corporate documents that purported to justify the existence of the corporate entities including the provision of a different Subscription Booklet for GLPAD, LLC d/b/a FX Capital, a New Mexico based limited liability company.[13]

24. Meteor is also the General Partner for GLPAD, LLC d/b/a FX Capital.[14]

25. Based upon DePetrillo's representations, explanations, and the provision of supporting documentation, the investments offered by DePetrillo appeared to be legitimate investment vehicles.[15]

26. Based upon DePetrillo's representations, both Lambeth and Kay decided to invest, and continue to invest, in the alleged investment funds.

27. Again, despite the Subscription indicating that the investment was purchasing a

---

[9] Exhibit #5, Page 2.
[10] Exhibit #5, Page 2.
[11] Exhibit #3.
[12] Exhibits #3 & #4.
[13] The Subscription Booklet for GLPAD, LLC d/b/a FX Capital is attached as Exhibit #6; The Limited Partnership Agreement for GLPAD, LLC d/b/a FX Capital is attached as Exhibit #10.
[14] Exhibit #6.
[15] The email from DePetrillo reassuring Lambeth that the investment was legitimate is attached as Exhibit #9.

partnership interest in a specific limited partnership, the plaintiffs were instructed to wire the investment funds to bank accounts at Chase Bank opened by DePetrillo in the name of Meteor, LLC, a company where DePetrillo serves as the sole member.[16]

28. Over the course of funding the investments, at DePetrillo's direction, several wires were also directed to an account at Chase Bank held in the name of another LLC that DePetrillo appears to control, ELC Enterprise Solutions, LLC.[17]

29. In the last round of investment, Lambeth invested a total of $75,000.00 and Kay invested a total of $40,000.00 in the alleged investment vehicles offered by DePetrillo.[18]

30. In June of 2023, DePetrillo sought additional investment from Lambeth for a Gold Futures Option Contract and sent Lambeth a document that purported to be an agreement that he had with a seller.[19]

31. The Assignment of Gold Futures Option Contract was in the name of Meteor, LLC, and not in the name of any of the purported limited partnerships described in the Subscription documents.[20]

32. DePetrillo redacted the contractual information that identified the seller, their commitment to perfect the transaction, or the pricing terms.[21]

33. Based upon the redactions, it was not possible for Plaintiffs to conduct any due diligence as the information related to the other party involved in the transaction was removed and Plaintiffs were left to rely upon DePetrillo's representations, assertions, and promises related to this request for additional investment. [22]

34. As with the prior requests for investment from DePetrillo, Plaintiffs chose to participate in this June 2023 offering.

---

[16] Exhibits #5 and #6.
[17] Wire information for Lambeth is attached as Exhibit #7; Wire information for Mr. Kay is attached as Exhibit #8.
[18] Exhibits #7 & #8.
[19] DePetrillo's transmittal e-mail is attached as Exhibit # 11; The Gold Futures Contract is attached as Exhibit #12.
[20] Exhibit #12.
[21] Exhibit #12.
[22] Exhibit #12.

35. Again, DePetrillo requested that Plaintiffs wire the funds to the bank accounts at Chase Bank opened by DePetrillo in the names of ELC Enterprise Solutions, LLC and Meteor, LLC. [23]

36. The purported option contract was purchased on June 26, 2023 and had an expiry date of August 1, 2023. [24]

37. As this investment vehicle was an option contract that expired on August 1, 2023, the Plaintiffs were entitled to the return of their invested funds upon the end of the option period. [25]

38. After the option term expired, Plaintiffs requested the return of their investment funds. [26]

39. DePetrillo did not immediately send the funds and began providing explanations for the delay such as issues with the Forex trading platform, etc. [27]

40. Plaintiffs believed DePetrillo's initial explanations. [28]

41. However, as time wore on, Plaintiffs began to sense that something was not right and started investigating the underlying basis for the investment.

42. Based upon the investigation, it appears that DePetrillo has not created, offered, managed, or controlled a legitimate investment vehicle or purchased the actual investments that he claimed to purchase.

43. Instead, DePetrillo has created a fraudulent system of making money based upon recruiting an ever-increasing number of "investors."  DePetrillo, the promoter, recruited investors, who in turn recruit more investors.

---

[23] Exhibits #7 & #8.
[24] Exhibit #12.
[25] Exhibit #12.
[26] The e-mail exchanges between Lambeth, Kay and DePetrillo regarding the return of investment are attached as Exhibit #s13-19.
[27] Exhibit #s13-19.
[28] Exhibit #s13-19.

***DePetrillo created an intricate web of corporate entities to make the investment vehicles appear legitimate on paper while also making it very difficult to investigate the validity of the investment or, ultimately, trace the fraud back to him.***

44. It appears that DePetrillo has perpetuated this fraudulent scheme through an intricate system of corporate entities that appear legitimate on the surface but are clearly not legitimate upon deeper investigation.

45. Meteor, LLC is a Louisiana based limited liability company formed by DePetrillo with a domicile address of 5500 Prytania Street, #204, New Orleans, Louisiana 70115.[29]

46. Although the domicile address looks legitimate, upon investigation, the company office is nothing more than "Prytania Mail Services" a UPS/ FedEx shipping center that maintains mailboxes for clients.[30]

47. DePetrillo lists 1207 Exposition Boulevard, New Orleans, Louisiana as the address that DePetrillo uses as the address for service of process where he can be served. However, upon investigation, the address is for a residential property facing Audubon Park that is owned by John F. Bennett, not DePetrillo.[31]

48. DePetrillo's other fund receiving entity, ELC Enterprise Solutions, LLC, also presents a corporate structure that indicates a high likelihood for the perpetuation of a fraud.[32]

49. ELC Enterprise Solutions, LLC is currently inactive with the Louisiana Secretary of State pursuant to an Affidavit to Dissolve filed in 2019 by Chris Cazenave, the company's Organizer.[33]

50. Despite being a dissolved entity, DePetrillo is continuing to use this entity to conduct business.[34]

51. The entity is also structured in a way that makes it impossible to determine the true

---

[29] Exhibit #1.
[30] Exhibit #1.
[31] Exhibit #1.
[32] Exhibit #2.
[33] Exhibit #2.
[34] Exhibit #2.

ownership of the entity, however, all corporate addresses point to DePetrillo, as 201 St.

Charles Avenue is the address for Jones Walker, DePetrillo's prior employer.[35]

52. The Secretary of State's records list 201 St. Charles Avenue, Suite 114-315, New Orleans,

Louisiana as the address for the mailing, domicile, and agent for service of process.[36]

53. According to Place St. Charles management staff, this address was the former UPS store

that was located on the ground floor.

54. Further solidifying the corporate organizer's attempt to make it difficult to locate the

entity, the Secretary of State lists Chris Cazenave as the agent for service of process at

201 St. Charles Avenue, Suite 114-315, New Orleans, Louisiana as the address for

service.[37]

55. However, Mr. Cazenave is not an employee of the referenced UPS Store and is actually a

partner with Jones Walker, a former colleague of DePetrillo, and can be found on the 51st

floor of 201 St. Charles Avenue, not the UPS store address provided to the Secretary of

State.[38]

56. It is inconceivable that any partner at Jones Walker could make this mistake and the

selection of the UPS store as an address for service is an intentional misrepresentation and

done solely to avoid service of process and to conceal the true ownership of the entity.

57. Plaintiffs do not believe that Mr. Cazenave is involved with the perpetuation of this fraud

and has done nothing more than agree to serve as an agent for service of process for an

entity formed by a colleague and filed an Affidavit of Dissolution on DePetrillo/ ELC's

behalf.[39]

58. The Louisiana Secretary of State lists ELC Enterprises, LLC as the member of the

---

[35] Exhibit #2.
[36] Exhibit #2.
[37] Exhibit #2.
[38] Exhibit #2.
[39] Exhibit #2.

company and lists an address of 201 E. 5th Street, Suite 300, Sheridan, Wyoming 82801 as its corporate address.[40]

59. However, the property located at this address is a restored historic train depot and is only two stories tall, making the existence of a "Suite 300" highly unlikely.

60. According to the Wyoming Secretary of State, ELC Enterprises, LLC was formed on April 22, 2018, sixteen days prior to the formation of ELC Enterprise Solutions, LLC with the Louisiana Secretary of State.[41]

61. The records of the Wyoming Secretary of State provides for a change in location for the principal office and lists 1309 Coffeen Avenue, Suite 3000, Sheridan Wyoming 82801 as the current principal office and mailing address for the company.[42]

62. As with the 5th Steet Adress, there is no way that the records portray an accurate location for the company as this address is a retail strip shopping center located in Sheridan, Wyoming and not a corporate office for an investment firm.

63. Furthermore, the records of the Wyoming Secretary of State do not provide any corporate information as to who the actual member of the company is, as the records list Pinnacle Solutions Consulting, LLC as the organizer. All corporate documents, including annual reports, were filed by Andrew Pierce, an attorney with Pinnacle.[43]

64. Pinnacle is nothing more than an entity that forms LLCs for clients.

65. GLPAD, LLC is the New Mexico based company that DePetrillo used as the underlying entity for GLPAD, LLC d/b/a FX Capital.[44]

66. The New Mexico Secretary of State reports that GLPAD, LLC was formed on April 23, 2018, the day after ELC Enterprises, LLC was formed in Wyoming, by Registered

---

[40] Exhibit #2.
[41] The Wyoming Secretary of State Records for ELC Enterprises, LLC are attached as Exhibit #s 20-22.
[42] Exhibit #22.
[43] Exhibit #s 20-22.
[44] The New Mexico Secretary of State Record for GLPAD, LLC is attached as Exhibit #23; Exhibit #13.

Agents, Inc, another entity that is in the business of setting up corporate entities for clients.[45]

67. The initial filing made by Registered Agents did not list the LLC's members.[46]

68. The principal place of business and mailing address for the entity was listed as 530-B Harkle Road, Suite 100, Santa Fe, New Mexico 87505.[47]

69. As with the other addresses used by DePetrillo, this address does not appear legitimate as OchoQuince is the actual business located at that address. OchoQuince is an internet service provider.

***DePetrillo conspired with his corporate entities to commit fraud and, when Plaintiffs noted their concerns and requested the return of their investment, DePetrillo continually apologized for not being able to return any part of their investment, accepted responsibility for his failure, and promised to return the funds on a certain timeline, a promise that he has never fulfilled.***

70. In short, a review of publicly available information confirms that DePetrillo and the company Defendants have conspired to commit securities fraud, fraud, and related statutory violations.

71. Based on their post-investment investigation, Lambeth and Kay have concluded that the material statements made by DePetrillo, to induce them to invest in DePetrillo's investment vehicles, were false when made.

72. After Plaintiffs requested the return of their funds, DePetrillo apologized for the delay in returning the funds, promised to return the funds the next week, apologized for not returning the funds, and stated that he "will make it right" via an email dated October 6, 2023 sent to Welch, with a cc to Kay, wherein he stated:

> Welch,
>
> I am sorry about all of the delays. This gold option may ended up ruining my company. It has essentially frozen our ability to operate. I am asking/pleading that you please not escalate this any further. You

---

[45] Exhibit #23.
[46] Exhibit #23.
[47] Exhibit #23.

will get your money back. We are in the process of getting a
business loan to cover investors while we pursue options on the gold.
I am hoping we close on that loan next week. I think that is
obviously the faster route than tying this up in litigation.

I can't tell you how sorry I am about this but I will make it right.
Mike[48]

73. As with prior promises to pay, the funds were never sent.

74. On October 13, 2023, after DePetrillo had promised payment on several occasions, Kay

sent DePetrillo an email stating:

Mike I just checked my bank account and there was no deposit.
Monday morning not only am I filing suit in Louisiana and North
Carolina I'm contacting FBI New Orleans. I can't believe we were
stupid enough to let you drag this out this long.
Brian Kay

75. DePetrillo responded twelve minutes later admitting that he owed the funds, that the funds

were forthcoming, and volunteered to turn himself into the FBI for criminal prosecution if

the funds were not sent, Depetrillo responded:

If you don't have the funds by 11am on Monday, I will turn myself
in if that's what you want.

I respect that we don't know each other Brian. And I feel awful that
your payments have been delayed. But like I said all along you will
not only be made whole but also get the return you were expecting.

I am a Christian and a dad. I will never let anything interfere with
those two things.

Mike[49]

76. As with prior promises, the funds were never sent and DePetrillo did not turn himself into

the FBI.

77. After repeated requests for the return of the funds and a suggestion that the claim was

going to be reported to the Federal Bureau of Investigation, on October 23, 2023,

DePetrillo again admitted that he owed the return of the invested funds and wrote an e-

---

[48] Exhibit #14.
[49] Exhibit #17.

mail stating as follows:

> Welch,
>
> I understand and I am sorry. I need until tomorrow when I can send $7K as a good faith payment to start returning funds.
>
> I also sent you $250 through Zelle now to test that you can receive funds that way as well. Please let me know you received it.
>
> I obviously have no intention of fighting any litigation around this. The money is yours and will be returned to you. To that end we can also sign some type of settlement agreement in lieu of proceeding with litigation that will allow you to enforce your rights if I don't pay you back by a date certain. I am open to that and can discuss with Matt.
>
> Mike[50]

78. As with all such promises to pay, the referenced payment has not been received.

79. As DePetrillo has admitted responsibility for causing this situation, he has already committed to not "fighting any litigation." [51]

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Defendants violated the Federal Securities Act.

80. Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

81. Defendants each violated Section 12(a) of the Securities Act of 1933, 15 U.S.C. § 77l(a), by offering or selling securities, which were not lawfully registered or exempted from registration, that included an untrue statement of a material fact, to Plaintiffs by use of the means, instruments of transportation, or communication in interstate commerce or the mails.

82. Defendants engaged in the above-described conduct intentionally, knowingly, or

---

[50] Exhibit #19.
[51] Exhibit #19.

recklessly.

83. Plaintiffs justifiably relied upon Defendants' misrepresentations or omissions of material fact in purchasing the securities, and sustained the damages sought in this lawsuit as a result.

84. Defendants' above-described violations of federal securities laws have proximately caused Plaintiffs to sustain damages in the amount of the purchase price paid by Plaintiffs for the securities.

85. Plaintiffs are entitled to rescission of the sale/ investment and to recover from the Defendants, jointly and severally, the consideration paid for the securities with interest as provided by law.

86. Additionally, DePetrillo is liable under Section 15(a) of the Securities Act of 1933, 15 U.S.C. § 77o(a), for the above-described violations of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a), by virtue of his status as the control person of the other Defendants.

87. Plaintiffs are also entitled to the recovery of exemplary damages, attorneys' fees, and costs related to DePetrillo's fraudulent conduct.

## SECOND CAUSE OF ACTION

### Defendants violated the Federal Exchange Act.

88. Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

89. Defendants, by use of the means, instruments of transportation, or communication in interstate commerce or the mails, have each committed the following wrongful acts in connection with the sale of the securities to Plaintiffs, in violation of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), as follows:

a.  employed devices, schemes, or artifices to defraud Plaintiffs;

b.  made untrue statements of material facts, and omitted material facts necessary to make the statements made not misleading in light of the circumstances under which they were made; and

c.  engaged in acts, practices, and courses of business, which operated as a fraud and deceit upon Plaintiffs.

90. Defendants engaged in the above-described conduct intentionally, knowingly, or recklessly.

91. Plaintiffs justifiably relied upon Defendants' misrepresentations or omissions of material fact in purchasing the securities, and sustained the damages sought in this lawsuit as a result.

92. The Defendants' above-described violations of the federal securities laws have proximately caused Plaintiffs to sustain damages in the amount of the purchase price paid by Plaintiffs for the securities. Plaintiffs are entitled to rescission of the sale and to recover from the Defendants, jointly and severally, the consideration paid for the securities with interest as provided by law.

93. Additionally, DePetrillo is jointly and severally liable under Section 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78t(a), for the above-described violations of Section 10(b) of the Exchange Act and Rule 10b-5 by virtue of his status as the control person of the Defendants.

94. Plaintiffs are also entitled to the recovery of exemplary damages, attorneys' fees, and costs related to DePetrillo's fraudulent conduct.

**THIRD CAUSE OF ACTION**

**Defendants violated the Louisiana Unfair Trade Practices Act.**

95. Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully

set forth herein.

96. Plaintiffs further allege that each Defendant participated in various activities constituting unfair trade practices in violation of the Louisiana Unfair Trade Practices Act ("LUTPA") La. Rev. Stat. § 51:1401, *et seq.*

97. Each Defendant knowingly used unfair and deceptive methods, acts, and practices to induce Plaintiffs' investment in the above-described fraudulent scheme.

98. Plaintiffs suffered a loss of money in the amount of the purchase price of the securities, as a resut of the Defendants' use of or employment of unfair and deceptive methods, acts, and practices and is therefore entitled to the recovery of such funds, interest, treble damages and reasonable attorney's fees under La. Rev. Stat. § 51:1409.

## FOURTH CAUSE OF ACTION

## Defendants violated the Louisiana Securities Law.

99. Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

100. Plaintiffs further allege that the Defendants violated the Louisiana Securities Law.

101. The Defendants each violated La. R.S. §51:712 A(1) by offering or selling securities to Plaintiffs that were not lawfully registered nor exempt from registration.

102. Defendants each violated La. R.S. §51:712 A(2) by offering to sell or selling the securities to Plaintiffs by means of oral or written untrue statements of material fact or omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

103. Defendants also violated Section La. R.S. §51:712 D, in connection with the offer and sale of the securities to Plaintiffs, by directly or indirectly employing a device, scheme, or artifice to defraud, and by engaging in transactions, acts, practices, or courses of business which operated as a fraud or deceit upon Plaintiffs.

104.     DePetrillo is jointly and severally liable under La. Rev. Stat. §15:714 B for the violations of La. R.S. §51:712 A and La. R.S. §51:712 D as described above by virtue of his status as the control person over the Defendants or his participation in the sale of the securities to Plaintiffs.

105.     Defendants each engaged in the above described conduct intentionally, knowingly, and recklessly.

106.     Plaintiffs justifiably relied upon Defendants' misrepresentations and omissions of material fact in purchasing the securities and sustained the damages sought in this lawsuit as a result.

107.     The Defendants' above-described violations of the Louisiana Securities Law have proximately caused Plaintiffs to sustain damages in the amount of the purchase price paid by Plaintiffs for the securities.

108.     Plaintiffs are entitled to rescission of the sale and to recover from the Defendants, jointly and severally, the purchase price paid for the securities with interest, taxable court costs, and reasonable attorneys' fees as provided by Section 714 of the Louisiana Securities Exchange Act, La. Rev. Stat. §15:714.

## FIFTH CAUSE OF ACTION

### Defendants are liable for fraud.

109.     Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

110.     Defendants made materially false representations to Plaintiffs (either knowingly or recklessly) with the intent that Plaintiffs would act on them by investing their funds with Defendants.

111.     Additionally, these defendants (1) concealed from or failed to disclose certain material facts to Plaintiffs that Defendants had a duty to disclose (and indeed were

deliberately silent when they had a duty to speak), or (2) made partial disclosures to Plaintiffs about material facts that created a substantially false impression. Defendants knew Plaintiffs were ignorant of the undisclosed facts and Plaintiffs did not have an equal opportunity to discover those facts.

112.      Plaintiffs justifiably relied on these representations, promises, or nondisclosures in making the various investment payments, causing them injury.

113.      These actions were also undertaken willfully and with malice, for which Plaintiffs seek to recover exemplary damages, punitive damages, attorneys' fee, and costs.

## SIXTH CAUSE OF ACTION

## Defendants are liable for conversion.

114.      Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

115.      An act of conversion is committed when any of the following occurs: (1) possession of property is acquired in an unauthorized manner; (2) property is removed from one place to another with the intent to exercise control over it; (3) possession of property is transferred without authority; (4) possession of property is withheld from the owner or possessor; (5) property is altered or destroyed; (6) property is used improperly; or (7) ownership is asserted over property.[52]

116.      Any wrongful exercise or assumption of authority over another's property, depriving him or her of possession, permanently or for an indefinite time, is a conversion.

117.      An allegation that the Defendants acquired the Plaintiffs' property through the Plaintiffs' unilateral mistake, or that the Defendants acted in complete innocence and perfect good faith, is not a defense to a conversion claim.

---

[52] *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 405, writ denied, 2010-1475 (La. 10/1/10), 45 So. 3d 1100.

118.     Defendants have committed conversion by obtaining possession of Plaintiffs' funds by soliciting funds for fraudulent investment vehicles and diverting the funds to DePetrillo's personal use.

119.     DePetrillo admitted that he owes the money on multiple occasions and repeatedly stated that he "will make it right."

120.     Defendants, despite acknowledging that they are wrongly withholding Plaintiffs' funds, have refused to return the funds to Plaintiffs and are liable for converting the funds.

121.     As a result of Defendants' conversion, Plaintiffs have suffered and will continue to suffer substantial economic damages, the precise amount of which will be established at the trial of this matter and for which Plaintiffs are entitled to recover from Defendants.

### SEVENTH CAUSE OF ACTION

### Defendants are liable for detrimental reliance.

122.     Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

123.     Plaintiffs submitted their investment funds to Defendants because they relied upon DePetrillo's representations that the various investment vehicles were legitimate, and that Plaintiffs' funds were to be invested in said investment vehicles.

124.     If not for the representations made by DePetrillo, Plaintiffs would have never wired Defendants the investment funds.

125.     DePetrillo was aware that Plaintiffs were relying upon DePetrillo's representations when they wired their funds to the entities that DePetrillo owned/ controlled.

126.     Plaintiffs' reliance upon the representations and assurances made by DePetrillo were reasonable.

127.     Defendants are barred from now taking a position contrary to its prior acts, admissions, representations, or silence.

19

128.     As a result of Plaintiffs' reliance upon DePetrillo 's representations, Plaintiffs have suffered and will continue to suffer substantial economic damages, the precise amount of which will be established at the trial of this matter and for which Plaintiffs are entitled to recover from Defendants.

## EIGHTH CAUSE OF ACTION

### Defendants are liable for fraudulent misrepresentation.

129.     Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

130.     Article 1953 of The Louisiana Civil Code provides that fraud is a vice of contractual consent.

131.     Article 1953 defines fraud as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.

132.     The tort of fraudulent misrepresentation requires: (1) a misrepresentation of a material fact; (2) made with the intent to deceive; (3) reasonable or justifiable reliance by the plaintiff on that representation; and (4) resulting injury.[53]

133.     Fraud may also result from silence or inaction.

134.     DePetrillo intentionally misrepresented material facts when seeking investment funds from Plaintiffs.

135.     DePetrillo was aware that these representations compelled Plaintiffs to wire him the requested funds.

136.     Plaintiffs reasonably relied upon DePetrillo's promises when making the decision to wire the requested investment funds.

---

[53] *Petkovich v. Franklin Homes, Inc.*, 2021-0448 (La. App. 4 Cir. 9/22/22), 349 So. 3d 1042, 1060.

20

137.    DePetrillo's misrepresentations induced Plaintiffs into sending DePetrillo the sought after investment funds, causing damages to Plaintiffs.

138.    Defendants have not provided Plaintiffs with the investments that they represented that they purchased for Plaintiffs, and has not returned the allegedly invested funds, despite Plaintiffs' repeated requests.

139.    As a result of Defendants' actions and representations, Plaintiffs have suffered and will continue to suffer substantial economic damages, the precise amount of which will be established at the trial of this matter and for which Plaintiffs are entitled to recover from Defendants.

140.    As a result of DePetrillo's fraudulent misrepresentations and suppression of material facts, Plaintiffs are entitled to the recovery of all damages suffered plus attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### Defendants are liable for negligent misrepresentation.

141.    Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

142.    The tort of negligent misrepresentation requires: (1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of the its justifiable reliance upon the omission or affirmative misrepresentation.[54]

143.    DePetrillo misrepresented material facts when seeking investment funds from the Plaintiffs.

---

[54] *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Associations, Inc.*, 2006-0974 (La. App. 4 Cir. 6/20/07), 962 So. 2d 1089, 1092.

144.     In the event that these misrepresentations were not intentional, a position that we do not concede, the representations were at minimum negligent.

145.     DePetrillo was aware that these representations compelled Plaintiffs to wire him the requested funds.

146.     Plaintiffs reasonably relied upon DePetrillo 's promises when making the decision to wire the requested investment funds.

147.     Defendants have not provided Plaintiffs with the investments that they represented that they purchased for Plaintiffs, and has not returned the allegedly invested funds, despite Plaintiffs' repeated requests.

148.     DePetrillo's misrepresentations induced Plaintiffs into sending DePetrillo the sought after investment funds, causing damages to Plaintiffs.

149.     As a result of Defendants' actions and representations, Plaintiffs have suffered and will continue to suffer substantial economic damages, the precise amount of which will be established at the trial of this matter and for which Plaintiffs are entitled to recover from Defendants.

150.     As a result of DePetrillo 's negligent misrepresentations and suppression of material facts, Plaintiffs are entitled to the recovery of all damages suffered plus attorneys' fees and costs.

## **TENTH CAUSE OF ACTION**

### **Plaintiffs are entitled to declaratory relief and imposition of a constructive trust over Defendants funds and assets.**

151.     Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

152.     A constructive trust is a common law based equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience

does not belong to the Defendants.

153.     To the extent that the proceeds of Plaintiffs' investments in the Defendants described above (the "Proceeds") remain in Defendants' possession and control, whether in the Chase Accounts or any other financial institution accounts to which they have been transferred, they constitute proceeds of Defendants' fraud. As such, under principles of equity, Plaintiffs are entitled to and hereby seek the imposition of a constructive trust on the Proceeds, wherever they may be found, whether in the Chase Account or elsewhere.

154.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C §2201 and §2202, a justiciable controversy exists between Plaintiffs and Defendants concerning the rights of the parties to the Proceeds, and Plaintiffs seek a declaration from this Court that they are entitled to the imposition of a constructive trust thereon (whenever they may have been transferred by Defendants), that their rights to the proceeds are superior to any claims by Defendants, and that the Proceeds should be ordered returned to them forthwith.

## ELEVENTH CAUSE OF ACTION

### Plaintiffs are entitled to injunctive relief.

155.     Plaintiffs reassert and re-aver all previously alleged Paragraphs of the Complaint as if fully set forth herein.

156.     Plaintiffs have and will continue to be damaged and injured by Defendants' conduct as set forth herein.

157.     Plaintiffs seek equitable relief herein in the form of a declaration of ownership in and Plaintiffs' rights to the Proceeds, and the imposition of a constructive trust thereon (on the basis of Defendants' fraud) and should succeed in obtaining such relief.

158.     Additionally, this relief should be granted ex parte initially, due to the risk that the Proceeds at issue might be transferred beyond this Court's jurisdiction if Defendants are given advance notice of this request. Accordingly, to preserve the status quo during the

pendency of this action, Plaintiffs seek a temporary restraining order—and, upon hearing, a preliminary and then permanent injunction—ordering that any remaining Proceeds in accounts controlled directly or indirectly by Defendants, including the Chase Accounts, should be frozen and immediately enjoining Defendants, or anyone acting in concert with them, including financial institutions or Defendants' agents, employees, attorneys, or representatives, from transferring, spending, encumbering, or otherwise dissipating those funds.

159.     If this relief is not granted Plaintiffs will be irreparably harmed and have no adequate remedy at law, especially considering the status of the individual Defendants and the uncertainty of collecting a money judgment from Defendants who have insufficient assets from whom a money judgment could be collected.

## **REQUEST FOR RELIEF**

160.     Plaintiffs respectfully requests that this Court award the following relief:

  a.  Rescission of the agreements and disgorgement of the investment proceeds;

  b.  Declaratory and injunctive relief as requested above;

  c.  Actual damages in an amount to be determined at trial;

  d.  Exemplary/ punitive/ treble damages;

  e.  Costs of court;

  f.  Attorney's fees;

  g.  Prejudgment and post-judgment interest; and

  h.  Any such other and further relief, in law or in equity, to which Plaintiffs may have shown themselves to be justly entitled.

**WHEREFORE,** after due proceedings are held, Plaintiffs Welch Lambeth and Brian Kay pray that judgment be granted herein against Defendants Michael DePetrillo, Meteor, LLC, and ELC Enterprise Solutions, LLC, in solido, affording to Plaintiffs all equitable relief and

amounts owed and damages resulting from Defendants' actions and omissions detailed above, plus costs, interest, attorneys' fees, as well as all other relief appropriate in law or equity.

**Respectfully submitted,**

**MILLER, SULLIVAN & DEMARCAY, LLC**

_____

**LAWRENCE R. DeMARCAY, III (#25379)**
1100 Poydras Street, Suite 1515
New Orleans, LA 70163
Phone:  504-708-1268
Mobile Phone: 504-400-3664
Fax:  504-708-1398
lrd@msdnola.com

*Counsel for Plaintiffs Welch Lambeth and Brian Kay*

## VERIFICATION OF WELCH LAMBETH

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the State of Louisiana,

**PERSONALLY CAME AND APPEARED:**

**WELCH LAMBETH,**

who, after being duly sworn by me, deposed, and stated as follows:

I, Welch Lambeth, am a plaintiff in the case captioned "*Welch Lambeth and Brian Kay v. Michael DePetrillo, Meteor, LLC, and ELC Enterprise Solutions, LLC*" and have authorized the filing of this Complaint. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the Exhibits attached to the Complaint and I believe them to be true. The attached Exhibits are accurate and authentic copies of the identified documents. As such, the statements made in the Complaint are consistent with my sworn testimony and if called to testify under oath, I will testify consistently with the allegations made in the Complaint.

I hereby declare under penalty of perjury that the forgoing it true and correct.

_____
WELCH LAMBETH

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned Notary Public, on this 23 day of January, 2024.

_____
**Notary Public**

ADRIANA WALKER
Notary Public
State of Louisiana
Orleans Parish
Notary ID # 185829
My Commission is for Life

26

## VERIFICATION OF BRIAN KAY

**STATE OF NORTH CAROLINA**
**POLK COUNTY**

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the State of Louisiana,

### PERSONALLY CAME AND APPEARED:

### BRIAN KAY,

who, after being duly sworn by me, deposed, and stated as follows:

I, Brian Kay, am a plaintiff in the case captioned *"Welch Lambeth and Brian Kay v. Michael DePetrillo, Meteor, LLC, and ELC Enterprise Solutions, LLC"* and have authorized the filing of this Complaint. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on the Exhibits attached to the Complaint and I believe them to be true. The attached Exhibits are accurate and authentic copies of the identified documents. As such, the statements made in the Complaint are consistent with my sworn testimony and if called to testify under oath, I will testify consistently with the allegations made in the Complaint.

I hereby declare under penalty of perjury that the forgoing it true and correct.

_____
**BRIAN KAY**

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned Notary Public, on this 26 day of January, 2024.

_____
**Notary Public**

> ERIN FRECK
> NOTARY PUBLIC
> HENDERSON COUNTY
> North Carolina
> My Commission Expires AUGUST 16, 2027